## LAMBERT *v.* YELLOWLEY ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 47. Argued April 30, 1926.—Decided November 29, 1926.

1. The provision of the National Prohibition Act that " Not more than a pint of spirituous liquor to be taken internally shall be

prescribed for use by the same person within any period of ten days and no prescription shall be filled more than once," is "appropriate legislation," within the meaning of the Eighteenth Amendment for enforcing its prohibition of the manufacture, sale, and transportation of intoxicating liquor for beverage purposes. P. 589.

2. Whatever the belief of a physician in the medicinal value of alcoholic liquor, his right to administer it to patients is subordinate to the powers granted to Congress by the Eighteenth Amendment. P. 596.

4 F. (2d) 915, affirmed.

APPEAL from a decree of the Circuit Court of Appeals which reversed a decree of the District Court (291 Fed. 640), enjoining Yellowley, a prohibition director, and other officials, from interfering with the plaintiff, Dr. Lambert, in his acts as a physician in prescribing vinous or spirituous liquors to his patients for medicinal purposes in quantities exceeding the limits fixed by the National Prohibition Act.

*Messrs. Joseph S. Auerbach* and *Martin A. Schenck,* with whom *Miss Emily C. Holt* was on the brief, for appellant.

The Eighteenth Amendment, in prohibiting the use of intoxicating liquor for beverage purposes, does not prohibit, or delegate the power to prohibit, medicinal use. Limitations are inherent in the terms of the Amendment; manufacture, sale, transportation, importation, and exportation. The prescription of alcoholic liquor for medicinal purposes was a long recognized relationship. Such relationship is not prohibited and is not inferentially to be included within any of the five specified prohibited relationships. The Amendment contains a further clearly defined limitation which modifies and controls each of the five definite classes of prohibited relationships. They are prohibited for one specific class of purpose. They are prohibited only "for beverage purposes."

It would have been easy to express a general and sweeping prohibition. The mentioning of the specific purpose is solely as a limitation. Where the remainder of the sub-

ject matter is left in other jurisdictions, the granting of power to Congress under this phraseology is necessarily a limitation to the purpose expressed. For example, industrial use is not prohibited. And it has been well held that there is " nothing in the Eighteenth Amendment grounding such power " to prohibit industrial use and that the use of alcohol for non-beverage purposes is a right protected by due process of law. *McGill* v. *Mellon*, 5 F. (2d) 262. Powers of definition and regulation present quite another question. *Selzman* v. *United States*, 268 U. S. 466. At the time of the drafting and ratification of the Amendment, the term " beverage purpose " in prohibition legislation had a generally accepted meaning. Beverage purpose was the antithesis of medicinal use. *Commonwealth* v. *Mandeville*, 142 Mass. 469; *Gue* v. *Eugene*, 53 Ore. 282; *State* v. *Roach*, 75 Me. 123; *State* v. *Costa*, 78 Vt. 198; *Bowman* v. *State*, 38 Tex. Cr. 14; *Thomasson* v. *State*, 15 Ind. 449; *State* v. *Larrimore*, 19 Mo. 391; *Sarrls* v. *Commonwealth*, 83 Ky. 327; *Nixon* v. *State*, 76 Ind. 524.

The Amendment sets forth a third separate class of limitation. The enforcement of the powers delegated under § 1 must, in accordance with § 2, be by appropriate legislation. This incorporates in the amendment the doctrine laid down by this Court that Congress cannot, in the exercise of the powers thus carefully limited, under the guise of enforcement, extend its powers to matters inappropriate. *United States* v. *Harris*, 177 U. S. 305; *National Prohibition Cases*, 253 U. S. 350.

The States, when they ratified the Amendment, not only were justified in relying upon the fact that under the very phraseology of the Amendment, as such terms had been used in the construction of prohibition laws by the courts, medicinal use was reserved; but could rely upon the express assurance of that fact given by the Senate Judiciary Committee in reporting the measure.

Prohibition of medicinal use is inappropriate to reasonable enforcement of prohibition as to beverage purpose. The physician, as this Court has recognized, is one whose relationships to life and health are of the most intimate character. He must possess the knowledge of diseases and their remedies, and also be safely entrusted to apply those remedies. It is thus the province of the States to require safeguards upon his character, his training, his knowledge—all for the purpose of securing to the patient an honest exercise of trained and intelligent judgment in the application of remedy to disease. *Hawker* v. *New York,* 170 U. S. 189; *Dent* v. *West Virginia,* 129 U. S. 114; Tiedeman, Control of Persons & Property, § 85, p. 239; Freund, Police Power, § 650.

The Act recognizes that the physician of trained judgment may properly determine that the prescription of alcoholic liquor is necessary to the treatment of a patient suffering from some known ailment, and that medicinal use is not a beverage purpose; Tit. II, §§ 6, 7, 8. This recognition on the part of Congress, that in the honest trained judgment of a physician the prescription of alcoholic liquor, according to fair medical standards, may be necessary to the cure of a patient, emphasizes the unreasonableness and arbitrary character of the rigid prohibition of more than one pint in ten days, regardless of the judgment of the physician and regardless of the need of the patient. The limitation eliminates any adequate prescription of liquor as a remedy in diseases running a course requiring it. Congress, after having recognized that some amount may be necessary, without looking into the question as to what amount will be required in the treatment of various diseases, rigidly fixes upon a useless, unreasonable, and arbitrary maximum amount and prohibits all else.

The question as to reasonableness has been peculiarly centered upon these particular spirituous liquor provisions

of the Volstead Act and of the supplemental Willis-Camp-bell Act. *Everard's Breweries* v. *Day,* 265 U. S. 545, following *United States* v. *Doremus,* 249 U. S. 86, decided that Congress, had found, upon testimony, that the medicinal value of malt liquors is not such as to require that their prescription be permitted, in view of access to vinous and spirituous liquors. The outstanding feature of the legislation in its present aspect is that it proceeds upon no investigation in regard to the facts, that it recognizes the necessity but prohibits the remedy, and that it has no relationship, in appropriateness, to the enforcement features of the powers delegated. The only constitutional guarantee of the citizen in such a situation is that this Court will insist upon the doctrine of appropriateness which has here been incorporated into the fundamental law by the very terms of the Amendment. Unless this is insisted upon, under guise of enforcement features, distinctions between powers of Congress and powers of the States are lost, and matters never intended to be delegated by the States to Congress are, nevertheless in violation of the terms of the grant, appropriated. *Lochner* v. *New York,* 198 U. S. 45; Freund, Police Power, § 223, p. 210. This Court has on closely analogous facts arrived at the conclusion of unreasonableness of such legislative provisions, and that the resultant control of medical practice in the States is inappropriate and unnecessary to reasonable enforcement. *Linder* v. *United States,* 268 U. S. 5. See also *United States* v. *Daugherty,* 269 U. S. 360; *United States* v. *Doremus,* 249 U. S. 86; *Hammer* v. *Dagenhart,* 247 U. S. 251; *Child Labor Tax Case,* 259 U. S. 20; *Hill* v. *Wallace,* 259 U. S. 44; *Adams* v. *Tanner,* 244 U. S. 590; *Childrens Hospital* v. *Adkins,* 284 Fed. 613.

*United States* v. *Freund,* 290 Fed. 411, held that it was an extravagant and unreasonable attempt to subordinate the judgment of the trained physician to that of Congress in respect of matters with which the former

alone is competent to deal; that it infringes upon the duty of the physician to prescribe in accordance with his honest judgment, and upon the right of the patient to receive the benefit of the judgment of the physician of his choice.

The limitations enumerated in the terms of the Eighteenth Amendment preclude any argument that there was an intention that the police power of the States, in regard to the regulation of medicine, be interfered with. *Barbier* v. *Connelly,* 113 U. S. 27; *Hammer* v. *Dagenhart,* 247 U. S. 251; *Bailey* v. *Drexel,* 259 U. S. 20.

*Assistant Attorney General Willebrandt,* with whom *Solicitor General Mitchell* and *Mr. Mahlon D. Kiefer,* Attorney in the Department of Justice, were on the brief, for appellees.

Restrictions on prescribing whiskey and wine are " appropriate " legislation to enforce the Eighteenth Amendment.

In legislating for the entire nation Congress adopted a much more liberal policy with reference to the prescription of intoxicating liquors for medicinal purposes than obtained in a majority of the States which had adopted prohibition prior to the ratification of the Eighteenth Amendment. When the Supplemental Act of 1921 was passed, approximately forty States had restricted the prescription of beverage intoxicants in some form, and in more than thirty the restriction was either the same as, or more rigid than, that provided in the federal law. In eleven States no intoxicating liquor of any kind could be prescribed. In Colorado the limitation was four ounces, and in Michigan eight ounces. In eleven other States pure alcohol only could be prescribed.

There is no right to practice medicine which is not subordinate to the police power. Congress recognized State experience and in the exercise of its police power followed

the lead of the States. Where there is conflict over the form in which a physician wishes to administer alcohol, the physician must yield to such requirements as "the lawful authority deems necessary." *Gray* v. *Connecticut,* 159 U. S. 74; *Dent* v. *West Virginia,* 129 U. S. 114; *Watson* v. *Maryland,* 218 U. S. 173; *Reetz* v. *Michigan,* 188 U. S. 505; *O'Neil* v. *State,* 115 Tenn. 427; *State* v. *Davis,* 194 Mo. 485; *State* v. *Rosenkrans,* 30 R. I. 374; *State* v. *Edmunds,* 127 Iowa 333.

Legislative Acts are presumed constitutional. *Interstate Ry. Co.* v. *Massachusetts,* 207 U. S. 79; *Hamilton* v. *Kentucky Distilleries,* 251 U. S. 146. *Everard's Breweries* v. *Day,* 265 U. S. 545. See *Price* v. *Russell,* 296 Fed. 263.

*Mr. William C. Woodward* filed a brief as *amicus curiae* by special leave of Court, on behalf of the American Medical Association.

*Messrs. Wayne B. Wheeler* and *Edward B. Dunford* filed a brief as *amici curiae* by special leave of Court.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The National Prohibition Act, October 28, 1919, c. 85, Title II, § 7, 41 Stat. 305, 311, provides: "No one but a physician holding a permit to prescribe liquor shall issue any prescription for liquor. . . . Not more than a pint of spirituous liquor to be taken internally shall be prescribed for use by the same person within any period of ten days and no prescription shall be filled more than once." The supplemental Act of November 23, 1921, c. 134, § 2, 42 Stat. 222, has a related but broader restriction to which reference will be made later on. Violation of the provision subjects the offender to fine or imprisonment or both. The limitation as to amount applies only to alcoholic liquor "fit for use for beverage purposes." National Prohibition Act, Title II, § 1. "Medicinal preparations manufactured in accordance with formulas

prescribed by the United States Pharmacopoeia, National Formulary or the American Institute of Homeopathy that are unfit for use for beverage purposes," and "patented, patent, and proprietary medicines that are unfit for use for beverage purposes," are specifically exempted from the operation of the provision. § 4(b) and (c). Moreover, the limitation does not apply to prescriptions for such liquor to be administered in certain hospitals. § b.

In November, 1922, Samuel W. Lambert of New York City, a distinguished physician, brought in the federal court for that district, this suit to enjoin Edward Yellowley, the acting Federal Prohibition Director, and other officials, " from interfering with complainant in his acts as a physician in prescribing vinous or spirituous liquors to his patients for medicinal purposes, upon the ground that the quantities prescribed for the use of any one person in any period of ten days exceed the limits fixed by said Acts, or either of them." As the basis for this relief the bill set forth Dr. Lambert's qualifications and experience as a physician; his belief that in certain cases, including some subject to his professional advice, the use of spirituous liquor internally as a medicine in an amount exceeding one pint in ten days is necessary for the proper treatment of patients in order to afford relief from human ailments; and that he does not intend to prescribe the use of liquor for beverage purposes. It alleged that to treat the diseases of his patients and to promote their physical well-being, according to the untrammelled exercise of his best skill and scientifically trained judgment, and, to that end, to advise the use of such medicines and medical treatment as in his opinion are best calculated to effect their cure and establish their health, is an essential part of his constitutional rights as a physician.

In May, 1923, the case was heard upon an application for an interlocutory injunction and a motion to dismiss. The District Court issued the injunction. 291 Fed. 640.

In December, 1924, the United States Circuit Court of Appeals for the Second Circuit reversed the decree, and directed that the bill be dismissed. 4 F. (2d) 915. In the interval, this Court had decided *Hixon* v. *Oakes,* 265 U. S. 254, and *Everard's Breweries* v. *Day,* 265 U. S. 545. In the latter, Dr. Lambert's counsel was permitted to file a brief, and to present an oral argument. The appeal in the case at bar was taken under §§ 128 and 241 of the Judicial Code and was allowed before the passage of the Act of February 13, 1925, c. 229, 43 Stat. 936. The claim is that the provision assailed is unconstitutional, because it has no real or substantial relation to the appropriate enforcement of the Eighteenth Amendment; that in enacting the provision Congress exceeded the powers delegated to it by the Amendment; and that thereby complainant's fundamental rights are violated.

The Eighteenth Amendment, besides prohibiting by § 1 the manufacture, sale and transportation of intoxicating liquors for beverage purposes, confers upon Congress by § 2, in terms, the power to enforce the prohibition by appropriate legislation. That the limitation upon the amount of liquor which may be prescribed for medicinal purposes, is a provision adapted to promote the purpose of the amendment is clear. That the provision is not arbitrary appears from the evidence considered by Congress [1] which embodies, among other things, the lessons of half a century of experience in the several States in dealing with the liquor problem.[2] That evidence dis-

[1] See House Report No. 224, 67th Cong., 1st Sess., Ser. No. 7920; Hearings before the Committee on the Judiciary of the House of Representatives on H. R. 5033, 15–16, 146; 61 Cong. Rec. 3456, 4035, 4036, 4038, 8749–8757.

[2] At the time of the passage of the National Prohibition Act, and/or the Willis-Campbell Act, the following state legislation concerning the prescription of alcoholic beverages for medicinal purposes was in effect. In 7 States no intoxicating liquor of any kind could be prescribed. Ariz. Const. Art. 23, *Cooper* v. *State,* 19 Ariz. 486; 1915

closed that practicing physicians differ about the value of malt, vinous and spirituous liquors for medicinal purposes, but that the preponderating opinion is against their use for such purposes; and that among those who prescribe them there are some who are disposed to give prescriptions where the real purpose is to divert the liquor to beverage uses. Indeed, the American Medical Associa-

---

Ida. Laws, c. 11, 1921 Ida. Laws, c. 50; 1917 Kan. Laws, c. 215, *State* v. *Miller*, 92 Kan. 994, 1000; 1916 Me. Rev. Stat. c. 20, § 17; 1915 N. C. Laws, c. 97, § 8; 1917 Utah Laws, c. 2, § 30; 1917 Wash. Laws, c. 19, § 2. In 3 States prescriptions could be made only if the liquor was made unfit for beverage purposes. 1919 Ga. Laws, No. 139, § 4(b); 1917 Neb. Laws, c. 187, § 25; 1921 N. Dak. Laws, c. 97, § 2. In 15 States only alcohol could be prescribed for medicinal purposes. 1919 Ala. Acts, No. 7, §§ 5, 7; 1919 Ark. I aws, c. 87, § 17; 1919 Del. Laws, c. 291, §§ 8, 14; 1918 Fla. Laws, c. 7736: § 5, amended by 1919 Fla. Laws, c. 7890, § 1; 1917 Ind. Acts, c. 4, § 13; 1908 Miss. Laws, c. 113; N. Mex. Const. Art. 23, 1919 N. Mex. Laws, c. 151; 1919 Nev. Stats., c. 1, § 4; 1910–1911 Okla. Laws, c. 70: § 1; 1915 Ore. Laws, c. 141, § 6(g), as amended by 1917 Ore. Laws, c. 40, § 2; 1921 S. C. Crim. Code, §§ 797, 798; 1919 S. Dak. Rev. Code, § 10273, as amended by 1919 S. Dak. Laws, c. 246, § 1; 1917 Tenn. Acts, No. 68, § 6; 1919 Tex. Laws, 2d Sess., c. 78, §§ 13, 14; 1921 W. Va. Acts, c. 115, amending c. 32A, § 4, Barnes' West Va. Code. In 3 States no more than a stated quantity of intoxicating liquor fit for beverage purposes can be prescribed at one time. 1915 Colo. Laws, c. 98, § 18; 1919 Mich. Acts, No. 53, § 19, *People* v. *Urcavitch*, 210 Mich. 431; 1918 Va. Acts, c. 388, § 13. In 11 States the standards of the federal law have been specifically adopted. 1921 Cal. Stats., c. 80; 1921 Ill. Laws, pp. 681, 687, § 8; 1920 Ky. Acts, c. 81, § 23; 1919 Minn. Laws, c. 455, § 7, as amended by 1921 Minn. Laws, c. 391, § 7; 1921 Mont. Laws, Ex. Sess., c. 9, § 6; 1921 N. J. Laws, c. 150, § 44; 1921 N. Y. Laws, c. 155, § 1214; 1921 Ohio Laws, p. 194, § 1; 1921 Vt. Laws, No. 204, § 5; 1921 Wis. Laws, c. 441, § 1(9); 1921 Wyo. Laws, c. 117, § 7. In 2 States only physicians holding a federal permit may prescribe such liquors. 1921 Conn. Pub. Acts, c. 291, § 4; 1922 R. I. Acts, c. 2231, § 4. In New Hampshire no limitations are placed upon the prescribing physician, save exercise of professional skill and the employment of specific forms and the keeping of records. 1919 N. H. Laws, c. 99, § 2, amending 1917 N. H. Laws, c. 147, §§ 16, 17.

tion, at its meeting in 1917, had declared that the use of alcoholic liquor as a therapeutic agent was without "scientific basis" and "should be discouraged," and, at its meeting in June, 1921, had adopted a resolution saying "reproach has been brought upon the medical profession by some of its members who have misused the law which permits the prescription of alcohol." With this as the situation to be met, the Judiciary Committee of the House of Representatives reported with favorable recommendation the bill which became the Act of November 23, 1921, whereby the prescription of intoxicating malt liquor for medicinal purposes is entirely prohibited, and the prescription of other intoxicating liquors is subjected to the following restrictions:

"No physician shall prescribe nor shall any person sell or furnish on any prescription, any vinous liquor that contains more than 24 per centum of alcohol by volume, nor shall any one prescribe or sell or furnish on any prescription more than one-fourth of one gallon of vinous liquor, or any such vinous or spirituous liquor that contains separately or in the aggregate more than one-half pint of alcohol, for use by any person within any period of ten days. No physician shall be furnished with more than one hundred prescription blanks for use in any period of ninety days, nor shall any physician issue more than that number of prescriptions within any such period unless on application therefor he shall make it clearly apparent to the commissioner that for some extraordinary reason a larger amount is necessary whereupon the necessary additional blanks may be furnished him."

The Committee said, in reporting the bill (House Report No. 224, 67th Cong., 1st Sess.):

"Section 2 prohibits the use of beer as medicine and limits the alcoholic strength and the quantity of wine that may be prescribed. It also provides that no liquor shall be prescribed for use in any period of 10 days that

contains more alcohol than that heretofore allowed. Under the national prohibition act 1 pint of beverage spirits can be prescribed. With the passage of this bill both spirituous and vinous liquor may be prescribed in one prescription, but the combined content of both liquors must not exceed one-half pint of alcohol. The purpose of this provision is not to increase the alcoholic content of the liquor that may be consumed, but to give physicians a choice between spirituous and vinous liquor within certain specified limits as to quantity.

"This section also writes into the law the present regulation as to the number of prescriptions that may be issued by a physician. One hundred are allowed within a period of 90 days, but this may be exceeded in cases of extraordinary circumstances such as the prevalence of contagious or epidemic diseases. Under ordinary circumstances reputable physicians only write a small fraction of this number, and only about 22 per cent. of the doctors hold permits to prescribe liquor of any kind, although they can be obtained without any fee, simply for the asking. There are a number of States in which the State laws prohibit physicians from prescribing liquor of any kind."

And also:

"While the majority of the States prohibit wine for medicinal purposes it was not deemed best by the committee that such provision should be inserted in the prohibition act at this time. In order, however, that this privilege should not be abused, it was deemed best to specifically limit its use, the same as has been done with spirituous liquor. Unless some limit is placed upon the amount of such liquors that may be prescribed, a number of physicians who do not have the high ethical standards of the large majority will abuse the privilege. Evidence was presented to the committee of physicians who issued hundreds of prescriptions within a few days when the

total number of other prescriptions was a negligible number. In view of the fact that most of the States have more stringent provisions than the one contained in section 2, this legislation will work no hardship upon the profession."

In *Everard's Breweries* v. *Day*, 265 U. S. 545, the validity of the provision prohibiting the prescription of malt liquor was assailed as going beyond the power of Congress and impinging upon the reserved powers of the States, in that it is an interference with the regulation of health and the practice of medicine, both of which are within the domain of the state power and outside the legislative power of Congress. The suit was against the Commissioner of Internal Revenue and other federal officers, and its chief purpose was to enjoin them from enforcing the provision prohibiting the prescription of malt liquor for medicinal purposes. This Court, besides observing that the " ultimate and controlling question " in the case was whether the provision prohibiting physicians from prescribing intoxicating malt liquors for medicinal purposes is within the power given to Congress by the Eighteenth Amendment, to enforce by " appropriate legislation " its prohibition of the manufacture, sale, etc., of intoxicating liquor for beverage purposes, proceeded to consider every phase of the question, and in conclusion held that the provision was appropriate legislation for the purpose and within the power of Congress, although affecting subjects which, but for the Amendment, would be entirely within State control. The Court referred to the settled rule that where the means adopted by Congress in exerting an express power are calculated to effect its purpose, it is not admissible for the judiciary to inquire into the degree of their necessity, and then said (p. 560):

" We cannot say that prohibiting traffic in intoxicating malt liquors for medicinal purposes has no real or substantial relation to the enforcement of the Eighteenth

23468°—27— 38

Amendment, and is not adapted to accomplish that end and make the constitutional prohibition effective. The difficulties always attendant upon the suppression of traffic in intoxicating liquors are notorious. *Crane* v. *Campbell,* 245 U. S. 304, 307. The Federal Government in enforcing prohibition is confronted with difficulties similar to those encountered by the States. *Ruppert* v. *Caffey, supra,* p. 297. The opportunity to manufacture, sell and prescribe intoxicating malt liquors for ' medicinal purposes,' opens many doors to clandestine traffic in them as beverages under the guise of medicines; facilitates many frauds, subterfuges and artifices; aids evasion; and, thereby and to that extent, hampers and obstructs the enforcement of the Eighteenth Amendment."

The Court further held that Congress must be regarded as having concluded—as it well might do in the absence of any consensus of opinion among physicians and in the presence of the absolute prohibition in many of the States—that malt liquor has no substantial medicinal qualities making its prescription necessary; and that this made it impossible to say the provision was an unreasonable and arbitrary exercise of power.

We have spoken of that case at length because the decision was by a unanimous court and if adhered to disposes of the present case. If Congress may prohibit the manufacture and sale of intoxicating malt liquor for medicinal purposes by way of enforcing the Eighteenth Amendment, it equally and to the same end may restrict the prescription of other intoxicating liquor for medicinal purposes. In point of power there is no difference; if in point of expediency there is a difference, that is a matter which Congress alone may consider. Experience has shown that opportunities for doing what the Constitution forbids are present in both instances, and that advantage not infrequently is taken of these opportunities. Congress, in deference to the belief of a fraction of the medical profession that vinous and spirituous liquors have

some medicinal value, has said that they may be prescribed in limited quantities according to stated regulations; but it also has said that they shall not be prescribed in larger quantities, nor without conforming to the regulations, because this would be attended with too much risk of the diversion of the liquor to beverage uses. Not only so, but the limitation as to quantity must be taken as embodying an implicit congressional finding that such liquors have no such medicinal value as gives rise to a need for larger or more frequent prescriptions. Such a finding, in the presence of the well-known diverging opinions of physicians, cannot be regarded as arbitrary or without a reasonable basis. On the whole, therefore, we think it plain that the restrictions imposed are admissible measures for enforcing the prohibition ordained by the Eighteenth Amendment.

A later case applying like principles is *Selzman* v. *United States*, 268 U. S. 466. There a section of the National Prohibition Act forbidding the sale of denatured alcohol without a compliance with certain regulations was assailed as beyond the authority of Congress under the Eighteenth Amendment upon the ground that the Amendment relates only to traffic in intoxicating liquor for beverage purposes, and that, as denatured alcohol is not usable as a beverage, authority to prevent or regulate its sale is not given to Congress by the Amendment, but remains exclusively in the States. This Court held the section valid for the following reasons:

" The power of the Federal Government, granted by the Eighteenth Amendment, to enforce the prohibition of the manufacture, sale and transportation of intoxicating liquor carries with it power to enact any legislative measures reasonably adapted to promote the purpose. The denaturing in order to render the making and sale of industrial alcohol compatible with the enforcement of prohibition of alcohol for beverage purposes is not always

effective.   The ignorance of some, the craving and the
hardihood of others, and the fraud and cupidity of still
others, often tend to defeat its object.   It helps the
main purpose of the Amendment, therefore, to hedge
about the making and disposition of the denatured article
every reasonable precaution and penalty to prevent the
proper industrial use of it from being perverted to drink-
ing it."

From the authority of these cases Dr. Lambert seeks
to escape by pointing out that he is a physician and
believes that the use of spirituous liquor as a medicinal
agent is at times both advisable and necessary.   He
asserts that to control the medical practice in the States
is beyond the power of the Federal Government.   Of
course his belief in the medicinal value of such liquor
is not of controlling significance; it merely places him
in what was shown to Congress to be the minor fraction
of his profession.   Besides, there is no right to practice
medicine which is not subordinate to the police power
of the States, *Dent* v. *West Virginia,* 129 U. S. 114; *Col-
lins* v. *Texas,* 223 U. S. 288; *Crane* v. *Johnson,* 242 U. S.
339; *Graves* v. *Minnesota, ante,* page 425, and also to
the power of Congress to make laws necessary and proper
for carrying into execution the Eighteenth Amendment.
When the United States exerts any of the powers con-
ferred upon it by the Constitution, no valid objection
can be based upon the fact that such exercise may be
attended by some or all of the incidents which attend
the exercise by a State of its police power.   *Hamilton* v.
*Kentucky Distilleries & Warehouse Co.,* 251 U. S. 146,
156; *Jacob Ruppert* v. *Caffey,* 251 U. S. 264, 300.   The
Eighteenth Amendment confers upon the Federal Gov-
ernment the power to prohibit the sale of intoxicating
liquor for beverage purposes.   Under it, as under the
" necessary and proper " clause of Article I, § 8 of the Con-
stitution, Congress has power to enforce prohibition " by

appropriate legislation." High medical authority being in conflict as to the medicinal value of spirituous and vinous liquors taken as a beverage, it would, indeed, be strange if Congress lacked the power to determine that the necessities of the liquor problem require a limitation of permissible prescriptions, as by keeping the quantity that may be prescribed within limits which will minimize the temptation to resort to prescriptions as pretexts for obtaining liquor for beverage uses. Compare *Jacobson* v. *Massachusetts,* 197 U. S. 11.

*Affirmed.*

MR. JUSTICE SUTHERLAND, dissenting.

The general design of the federal Constitution is to give to the federal government control over national and international matters, leaving to the several states the control of local affairs. Prior to the adoption of the Eighteenth Amendment, accordingly, the direct control of the manufacture, sale and use of intoxicating liquors *for all purposes* was exclusively under the police powers of the states; and there it still remains, save insofar as it has been taken away by the words of the Amendment. These words are perfectly plain and cannot be extended beyond their import without violating the fundamental rule that the government of the United States is one of delegated powers only and that " the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." The pertinent words of the Amendment are: ". . . the manufacture, sale, or transportation of intoxicating liquors . . . *for beverage purposes* is hereby prohibited." Plainly, Congress in submitting the Amendment, and the several states in ratifying it, meant to leave the question of the prohibition of intoxicating liquors for other than beverage purposes to the determination of the states, where it had always been. The limiting words of the Amendment are not sus-

598 OCTOBER TERM, 1926.

Sutherland, McReynolds, Butler, and Stone, JJ., dissenting. 272 U. S.

ceptible of any other meaning; and to extend them beyond the scope of that meaning really is to substitute words of another and different import.

It is important also to bear in mind that " direct control of medical practice in the States is beyond the power of the Federal Government." *Linder* v. *United States*, 268 U. S. 5, 18. Congress, therefore, cannot directly restrict the professional judgment of the physician or interfere with its free exercise in the treatment of disease. Whatever power exists in that respect belongs to the states exclusively.

The sole question which we are called upon to consider is whether the district court erred in denying the motion of the defendants to dismiss plaintiff's bill; and upon that question, of course, we are bound to accept as true all allegations of the bill which are well pleaded.

The suit was brought by a physician of distinction and, as the court below said, " of wide and unusual experience in the practice of medicine." He alleges that it is his opinion, based on experience, observation and medical study, that the use of spirituous liquors as medicine is, in certain cases, necessary in order to afford relief from known ailments; and that in the use of such liquors as medicine it is, in certain cases, including some now under his own observation and subject to his professional advice, necessary, in order to afford relief, that more than one pint of such liquor in ten days should be used internally and, in certain cases, necessary that it should be used without delay, notwithstanding that within a preceding period of less than ten days one pint of such liquor has already been used. He further alleges that in prescribing drugs and medicines the determination of the quantity involves a consideration of the physical condition of the patient and their probable effect in each specific case.

In addition to these allegations, we have the fact that Congress, acting upon a report of one of its committees

made after exhaustive hearings, declared by statute that the prescription of malt liquors should be prohibited and the prescription of spirituous and vinous liquors should be permitted.  Justifying such legislation, the committee had reported that the overwhelming evidence was to the effect that *malt* liquors [*not also spirituous and vinous liquors*] had no substantial medicinal value.  It is now said by the majority, at one point, that the preponderating opinion of practicing physicians is against the use of all three and, at another point, that only a minor fraction hold the other view.  I am quite unable to assent to these generalizations.  On the contrary, the impossibility of determining, from anything now before this court, what is the preponderating opinion upon the subject, is very clear.  An examination of the hearings before the House Judiciary Committee, cited as authority for the foregoing statements, shows that the inquiry there was directed to the question of the medical value of *malt liquors* and that the question of the medical value of the other liquors was not under consideration.  The hearings contain a few casual references to the other liquors; but I feel justified in saying that they reflect no light upon the state of medical opinion as to the value of such liquors as medicines.  It is stated in the brief for the appellees that a questionnaire, sent out to one-third of the physicians of the United States, brought a reply from enough to make 21.5 per cent. of the whole number of physicians in the country, and that a little more than one-half of those replying voted " Yes " on the use of whiskey as a therapeutic agency, some of them, however, taking exception to the word " necessary," saying that no drugs were absolutely necessary.  The American Medical Association, whose resolution of 1917 is referred to, have filed in this case a brief as *amicus curiae,* challenging the conclusion which is drawn from that resolution and vigor-

ously attacking the Act now under review as arbitrary and unreasonable. In 1924 the House of Delegates of the Association adopted a resolution expressing its disapproval of those portions of the Act "which interfere with the proper relation between the physician and his patient in prescribing alcohol medicinally." It seems plain, therefore, that the most that can be said is that the question is of a highly controversial character; and, since it reasonably cannot be doubted that it is a fairly debatable one, the legislative finding, necessarily implicit in the Act, that vinous and spirituous liquors are of medicinal value, must be accepted here. *Radice* v. *New York,* 264 U. S. 292, 294; *Rast* v. *Van Deman & Lewis,* 240 U. S. 342, 357; *Price* v. *Illinois,* 238 U. S. 446, 452.

The majority opinion rests chiefly upon *Everard's Breweries* v. *Day,* 265 U. S. 545, which, it is said, was decided by a unanimous court and, if adhered to, disposes of the present case. While, of course, in the light of the present ruling, I cannot say that, if the court had entertained that view of the scope of its decision at the time of its rendition, it would not have been rendered; I do say it is very certain that it would not have been by a unanimous court. In the opinion in that case there is some general discussion of the power of Congress in respect of the adoption of appropriate means to enforce the Eighteenth Amendment, but the decision rests upon the ground that Congress, upon conflicting evidence, had determined that *malt* liquors possessed no substantial medicinal value and judicial inquiry upon that question was, therefore, foreclosed. In direct response to the contention that the Act was an "arbitrary and unreasonable prohibition of the use of valuable medicinal agents," it was said (pp. 561–562):

"When the bill was pending in Congress the Judiciary Committee of the House of Representatives held an extended public hearing, in which it received testimony,

among other things, on the question whether beer and other intoxicating malt liquors possessed any substantial medicinal properties. Hearings before House Judiciary Committee on H. R. 5033, Serial 2, May 12, 13, 16, 17, 20, 1921. On the information thus received the Committee recommended the passage of the bill. H. R., 67th Cong., 1st sess., Rep. No. 224. And in the light of all the testimony Congress determined, in effect, that intoxicating malt liquors possessed no substantial and essential medicinal properties which made it necessary that their use for medicinal purposes should be permitted, and that, as a matter affecting the public health, it was sufficient to permit physicians to prescribe spirituous and vinous intoxicating liquors in addition to the non-intoxicating malt liquors whose manufacture and sale is permitted under the National Prohibition Act."

And finally (p. 563):

"We find, on the whole, no ground for disturbing the determination of Congress on the question of fact as to the reasonable necessity, in the enforcement of the Eighteenth Amendment, of prohibiting prescriptions of intoxicating malt liquors for medicinal purposes. See *Radice* v. *New York*, 264 U. S. 292."

And so here, the legislative finding, implicit in the statute now under review, to the contrary effect, in respect of *spirituous* and *vinous* liquors, likewise should be accepted as controlling, and the *Everard's Breweries* case rejected as inapplicable.

As the record now stands, therefore, we must begin this inquiry with the assumption that vinous and spirituous liquors are in fact valuable medicines; and it necessarily follows that, at least as an end as distinguished from a means to an end, the prescription of such liquors in good faith for medicinal use cannot be prohibited *by Congress*, since that body lawfully cannot legislate beyond the grants of the Constitution. The report of the committee

and the hearings will be searched in vain to find any suggestion that the quantity designated by the statute is adequate or that the committee or Congress gave any consideration to that question. The only fact in this record bearing upon that subject is the allegation, under oath, of appellant that in his professional opinion, based on experience, observation and medical study, more than that quantity, in certain cases, including some under his own observation and advice, is necessary. And, certainly, there is no basis for asserting the contrary in any fact or circumstance to be found outside the record of which this Court can take judicial notice.

The naked question, then, simply comes to this: Conceding these liquors to be valuable medicines, has Congress power, under the constitutional provision prohibiting traffic in intoxicating liquors for beverage purposes, to limit their prescription in good faith, and consequently their necessary use, for medicinal purposes, to a quantity which, under the allegations taken as true, is inadequate for such purposes? To me the answer seems plain. If Congress cannot altogether prohibit the prescription for medicinal use, it cannot limit the prescription to an inadequate quantity, for, obviously, in that case, *to the extent of the inadequacy,* the prohibition is as complete, and the usurpation of power as clear, as though the prohibition were unqualified. If the power exists to limit the quantity to a pint in ten days, it exists to limit the quantity to a tablespoonful or a teaspoonful or a few drops during the same or any other arbitrary period of time, with the result in substance and effect that the definite limitation of the prohibitory power by the words " for beverage purposes " vanishes altogether.

It is said that high medical authority is in conflict as to the medicinal value of spirituous and vinous liquors and [hence] it would be strange if Congress lacked power to determine that the necessities of the liquor problem re-

581   Sutherland, McReynolds, Butler, and Stone, JJ., dissenting.

quire a reasonable limitation of the permissible prescriptions. This observation does more than beg the question,—it indulges an assumption the exact contrary of that which the record conclusively establishes, for the limitation of quantity is not only unsupported by any legislative finding that it is reasonable, but it is in flat opposition to the only facts appearing in the record which bear upon the question of what is a permissible prescription, and, therefore, is without rational basis, resting alone upon the arbitrarily exercised will of Congress. I do not see how it can be held otherwise without completely ignoring the case as made and constructing and considering another and different case.

Nor is the opinion of the majority aided by the long list of state enactments cited to demonstrate that the present statute is not arbitrary, for, since the control of the medical practice is outside the province of the federal government and wholly within that of the states, *Linder* v. *United States, supra,* the powers of Congress in that field are not to be assimilated to those of the states.

By the legislation now under review, the authority of Congress is so exercised that the reserved power of the states to control the practice of medicine is directly invaded, to the illegitimate end that the prescription and use of liquors for medicinal purposes is prohibited. It is true that Congress has wide discretion in the choice of means to carry the granted power into effect; but the means not only must be appropriate to the end but must be such as " are not prohibited, but consist with the letter and spirit of the Constitution." *McCulloch* v. *Maryland,* 4 Wheat. 316, 421. A grant of power to prohibit for specified purposes does not include the power to prohibit for other and different purposes. Congressional legislation directly prohibiting intoxicating liquor for concededly medical purposes, therefore, does not consist with the letter and spirit of the Constitution, and viewed as a

means of carrying into effect the granted power is in fraud of that instrument, and especially of the Tenth Amendment. The words of Mr. Madison (Writings of James Madison, vol. 6, p. 367) are pertinent: "Nor can it ever be granted that a power to act on a case when it actually occurs, includes a power over all the means that may *tend to prevent* the occurrence of the case. Such a latitude of construction would render unavailing every practical definition of particular and limited powers."

The effect of upholding the legislation is to deprive the states of the exclusive power, which the Eighteenth Amendment has not destroyed, of controlling medical practice and transfer it in part to Congress. See *Hammer v. Dagenhart*, 247 U. S. 251, 275–276. It goes further, for if Congress can prohibit the prescription of liquor for necessary medical purposes as a means of preventing the furnishing of it for beverage purposes, that body, by a parity of reasoning, may prohibit the manufacture and sale for industrial or sacramental purposes, or, indeed, as the most effective possible means of preventing the traffic in it for beverage purposes, may prohibit such manufacture and sale altogether, with the result that, under the pretense of adopting appropriate means, a carefully and definitely limited power will have been expanded into a general and unlimited power. "The purposes intended must be attained consistently with constitutional limitations and not by an invasion of the powers of the States. This court has no more important function than that which devolves upon it the obligation to preserve inviolate the constitutional limitations upon the exercise of authority, federal and state, to the end that each may continue to discharge, harmoniously with the other, the duties entrusted to it by the Constitution." *Hammer v. Dagenhart, supra,* p. 276.

I do not doubt the authority of Congress to *regulate* the disposal of intoxicating liquors for medicinal use so as to prevent evasions of the law against the traffic in such

liquors for beverage purposes, and to that end to surround the prescription by the physician with every appropriate safeguard against fraud and imposition; but as this record now stands it cannot *prohibit* the legitimate prescription of spirituous and vinous liquors for medicine as this statute attempts to do. " Federal power is delegated, and its prescribed limits must not be transcended even though the end seem desirable." *Linder* v. *United States, supra,* p. 22. Because this statute by fixing inadequate prescriptions prohibits to the extent of such inadequacies the legitimate prescription of spirituous and vinous liquors for medicinal purposes, it exceeds the powers of Congress, invades those exclusively reserved to the states, and is not appropriate legislation to enforce the Eighteenth Amendment. The decree below should be reversed.

Mr. Justice McReynolds, Mr. Justice Butler and Mr. Justice Stone concur in this opinon.